A91A0537. HADSON GAS SYSTEMS, INC. v. ATLANTA
AIRLINES TERMINAL CORPORATION.
(408 SE2d 454)

SOGNIER, Chief Judge.

Hadson Gas Systems, Inc. (Hadson) brought suit on account against its customer, Atlanta Airlines Terminal Corporation (AATC), seeking $48,660.50 for natural gas shipped to AATC during the month of November 1988. AATC answered and moved for summary judgment, which was granted by the trial court. Hadson appeals.

The record reveals that appellee, which operates the passenger terminal at the Atlanta airport, contracted with Cheney Energy Corporation, appellant's predecessor in interest, for the routine periodic purchase of gas required to operate the terminal. The contract provided that gas would be delivered through Atlanta Gas Light Company in the quantities requested by appellee at prices adjusted monthly, and specified that changes in the requested amount required two days' written notice. Both parties admit that in practice, however, adjustments were typically made by telephone, both by Cheney and by appellant after its subsidiary acquired the contract. In October 1988 appellee requested a curtailment of gas shipments and this request was honored. However, in November appellant resumed delivery of gas in the same amount requested and delivered in October. Appellee could not immediately use the gas shipped, and this resulted in Atlanta Gas Light imposing upon appellee a charge for storage. The parties disagree whether the resumption was requested by appellee, but it is undisputed that if there was a resumption request, it was not in writing.

Upon receipt of the December 7, 1988 invoice from appellant for $65,520 for the November gas shipment, appellee's counsel sent appellant a letter, dated December 15, 1988, informing appellant that it considered the November shipment unauthorized and felt entitled to deduct the storage charges from the invoice price for the gas. The letter informed appellant that appellee would make no payment on the account until it learned from Atlanta Gas Light the amount of the

storage charges. Appellant did not respond to that letter or a subsequent January 17, 1989 letter from Sam Cobbs, appellee's Director of Finance and Administration, which reported to appellant the mounting storage charges that appellee again stated it would apply against the November invoice. On February 14, 1989, appellee tendered by mail its check for $16,859.50 for the November gas shipment. The check was accompanied by a letter from Cobbs stating that the check was "in payment of [appellant's] invoice number 4037 less banked gas charges for unauthorized shipment referenced in our December 15, 1988 letter," and detailing the amounts of the storage penalties it was setting off against the invoice.

Appellant had a lockbox arrangement with Citibank of Delaware, under which checks in payment of accounts were sent directly to a post office box and received by Citibank, which processed the checks on appellant's behalf immediately unless they bore the notation "paid in full." Any correspondence attached to the checks was copied and mailed to appellant. Appellee's check, which was not marked "paid in full," was sent to the post office box indicated on the invoice and processed in routine fashion by Citibank under the lockbox arrangement. A photocopy of the accompanying letter was forwarded to appellant's president, Robert Laughman. Upon receipt of the letter, appellant's vice president and in-house counsel notified Cobbs that appellant disgreed with appellee's contentions and actions, and would institute legal action if the balance it claimed was owed was not paid. It is uncontroverted that appellant did not return to appellee the proceeds of the $16,859.50 check.

1. Appellant contends the trial court erred by granting summary judgment to appellee because genuine questions of material fact remain whether an accord and satisfaction occurred. We do not agree. "Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed." OCGA § 13-4-101. "In Georgia, the general rule on accord and satisfaction is that 'if a debtor remits to the creditor a sum of money, less than the amount actually due, upon the condition, either express or implied, that it is in satisfaction of the creditor's claim, and the latter accepts and retains the money, an accord and satisfaction results, and this is true whether the demand be liquidated or unliquidated, disputed or undisputed.' [Cit.]" *Souchak v. Close*, 132 Ga. App. 248, 250 (207 SE2d 708) (1974).

(a) Appellant argues no accord and satisfaction occurred because it never accepted the check. Although appellant argues that Citibank had no authority to compromise or settle claims in its behalf and thus, Citibank's action in accepting and negotiating the tendered check may not be attributed to appellant, it is clear that even after appellant clearly became aware of Citibank's actions it retained the

proceeds of the check, which was for an amount less than the amount alleged to be due, thus ratifying Citibank's action. See *Georgia Power Co. v. W. H. I. Atlanta*, 148 Ga. App. 396, 398 (251 SE2d 319) (1978). Accordingly, we do not agree with appellant that it did not accept the check.

(b) Nor do we agree with appellant that the requirements for an accord and satisfaction were not satisfied because the check was not marked "paid in full" on its face. "It is not necessary that a check or the accompanying correspondence contain magic words such as 'payment in full,' 'in full consideration' or 'in final payment' if there is some other documentary evidence to show what the check is intended to cover, i.e., itemization of deductions from the balance alleged to be due. [Cit.]" *Commercial &c. Co. v. Southeastern &c., Inc.*, 159 Ga. App. 443, 445-446 (11) (283 SE2d 660) (1981). Accord *Mobley v. Fulton Roofing Co.*, 173 Ga. App. 563, 564 (327 SE2d 540) (1985). In the case sub judice, the letter accompanying the check did just that — itemized the deductions taken against the invoice for the storage charges. Accordingly, we find present all conditions necessary for the occurrence of an accord and satisfaction. Id. at 564, 565.

Moreover, appellant's retention of the proceeds "clearly worked an accord and satisfaction." *Superior Rigging &c. Co. v. Maddox*, 260 Ga. 855, 856-857 (401 SE2d 258) (1991). Appellee had twice informed appellant of its intention to deduct the storage charges from the invoice amount before doing so. If appellant still disagreed with the position asserted by appellee or disavowed Citibank's action, its recourse was to return the amount tendered. "By negotiating the [check] and retaining the proceeds . . . , [appellant] accepted the [check] pursuant to the terms [on which] it was offered. [Cits.]" Id. The defense of accord and satisfaction having been proved, the trial court did not err by granting summary judgment to appellee. See generally id.

2. The trial court's order does not indicate whether Georgia law or Texas law was applied in reaching the conclusion that an accord and satisfaction existed, thereby entitling appellee to summary judgment. Appellant maintains the trial court erroneously applied Georgia law when the contract provides that Texas law governs. We need not address this contention because our review of applicable Texas law persuades us that its application to these facts does not mandate a different result. See, e.g., *Pileco, Inc. v. HCI, Inc.*, 735 SW2d 561, 562 (Tex. Ct. App. 1987). Accord *Hixson v. Cox*, 633 SW2d 330, 331-332 (Tex. Ct. App. 1982); *Roylex, Inc. v. S & B Engineers*, 592 SW2d 59, 60 (Tex. Civ. App. 1979).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 27, 1991 —
RECONSIDERATION DENIED JULY 9, 1991 —

*Harman, Owen, Saunders & Sweeney, Perry A. Phillips, L. Katharine Adams*, for appellant.

*Bondurant, Mixson & Elmore, Jeffrey O. Bramlett, Suzanne F. North*, for appellee.